**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTINE WAUGH, | Civil Action No. |
| Plaintiff, | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| | <u>**JURY TRIAL DEMANDED**</u> |
| RIGNET, INC., JAMES H. BROWNING, GAIL SMITH, STEVEN E. PICKETT, KEVIN J. O'HARA, MATTIA CAPRIOLI, DITLEF DE VIBE, KEVIN MULLOY, KEITH OLSEN, and BRENT K. WHITTINGTON, | |
| Defendants. | |

Plaintiff Christine Waugh ("Plaintiff") by and through her undersigned attorneys, brings this action on behalf of herself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by RigNet, Inc. ("RigNet" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning RigNet and the Defendants.

## SUMMARY OF THE ACTION

1.     This is an action brought by Plaintiff against RigNet and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to Viasat, Inc. ("Viasat") (the "Proposed Transaction").

2.     On December 20, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Viasat.  Pursuant to the terms of the Merger Agreement the Company's shareholders will receive 0.1845 of a share of Viasat common stock per share of RigNet owned (the "Merger Consideration").

3.     On February 1, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading registration statement with the SEC on Form S-4 (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against RigNet and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to RigNet shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.     This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, the owner of RigNet shares.

9.     Defendant RigNet is incorporated under the laws of Delaware and has its principal executive offices located at 15115 Park Row Boulevard, Suite 300, Houston, Texas 77084.  The Company's common stock trades on the NASDAQ Global Select Market under the symbol "RNET."

10.     Defendant James H. Browning ("Browning") is and has been the Chairman of the Board of RigNet at all times during the relevant time period.

11.     Defendant Gail Smith ("Smith") is and has been a director of RigNet at all times during the relevant time period.

12.     Defendant Steven E. Pickett ("Pickett") is and has been the President, Chief Executive Officer, and a director of RigNet at all times during the relevant time period.

13.     Defendant Kevin J. O'Hara ("O'Hara") is and has been a director of RigNet at all times during the relevant time period.

14.     Defendant Mattia Caprioli ("Caprioli") is and has been a director of RigNet at all times during the relevant time period.

15.     Defendant Ditlef de Vibe ("Vibe") is and has been a director of RigNet at all times during the relevant time period.

16.     Defendant Kevin Mulloy ("Mulloy") is and has been a director of RigNet at all times during the relevant time period.

17.     Defendant Keith Olsen ("Olsen") is and has been a director of RigNet at all times during the relevant time period.

18.     Defendant Brent K. Whittington ("Whittington") is and has been a director of RigNet at all times during the relevant time period.

19.     Defendants Browning, Smith, Pickett, O'Hara, Caprioli, Vibe, Mulloy, Olsen, and Whittington are collectively referred to herein as the "Individual Defendants."

20.     The Individual Defendants, along with Defendant RigNet, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

21.     RigNet delivers advanced software and communications infrastructure that allow its customers to realize the business benefits of digital transformation. With world-class, ultra-secure solutions spanning global IP connectivity, bandwidth-optimized OTT applications, IIoT

big data enablement, and industry-leading machine learning analytics, RigNet supports the full

evolution of digital enablement, empowering businesses to respond faster to high priority issues,

mitigate the risk of operational disruption, and maximize their overall financial performance.

### The Company Announces the Proposed Transaction

22.     On December 21, 2020, the Company jointly issued a press release announcing

the Proposed Transaction.  The press release stated in part:

> CARLSBAD, Calif., Dec. 21, 2020 /PRNewswire/ -- Viasat Inc. (NASDAQ: VSAT), a global communications company, today announced it entered into a definitive agreement to acquire RigNet, Inc. (NASDAQ: RNET), a leading provider of ultra-secure, intelligent networking solutions and specialized applications, in an all-stock transaction that values RigNet at an enterprise value of approximately $222 million based on Viasat's share price as of the date of the agreement and RigNet's net debt at September 30, 2020.
>
> The acquisition will help to further accelerate Viasat's strategy to provide high-quality, ubiquitous, affordable broadband connectivity and communications to the hardest-to-reach locations around the globe. RigNet provides premier, global end-to-end, secure managed communications service and installation capabilities, along with digital transformation solutions, which will enable Viasat to quickly expand into new adjacent industries, including: energy, shipping, maritime, mining and additional enterprises.
>
> Rick Baldridge, Viasat's president and CEO commented, "With the acquisition of RigNet, we are accelerating the diversification of our connectivity portfolio and establishing a global foundation for expansion of our remote enterprise service offerings. RigNet's successful track record, global footprint, deep customer relationships and emerging technology expertise in areas like machine learning and artificial intelligence (AI) make this transaction an ideal fit as we launch our integrated global broadband platform. The transaction is accretive to cashflow, and is expected to improve our leverage position as well as offer multiple opportunities for expansion and performance upside beyond RigNet's robust energy services business. We're looking forward to welcoming the RigNet team to the Viasat family post-closing."
>
> "There is a powerful alignment between RigNet and Viasat given our shared mission to provide fast, reliable coverage, anywhere customers require it," said Steven Pickett, president and CEO, RigNet. "We have broad experience integrating broadband connectivity and networking capabilities in the most challenging environments—gained from our global deployment of more than 1,200 onshore and offshore sites and 11,000 Industrial Internet of Things (IIoT)

sites. This combination also represents an outstanding opportunity for us to accelerate both the investment in and the adoption of our digital transformation solutions more rapidly outside of our core oil & gas vertical. Our customers are demanding more enhanced communications solutions, and joining forces with Viasat—a recognized leader in satellite broadband connectivity—will enable us to serve them better."

**Industry expansion opportunities**

Acquiring RigNet will  give Viasat direct  access  to  over  650  customers  and expand      and      diversify Viasat's commercial     connectivity     portfolio, providing Viasat an  opportunity to  more  quickly  enter  adjacent  industries.  For example, by combining the strong gains in bandwidth efficiencies expected from the     impending ViaSat-3     constellation     and RigNet's portfolio     of services, Viasat will     become     a     leading     vertically-integrated     energy communications provider with deep domain and customer expertise.

**Complementary digital transformation toolset**

Acquiring RigNet will give Viasat access to complementary core technology and services, including RigNet's digital transformation toolset, which includes its end-to-end managed communications and connectivity service capabilities, like SD-WAN; the Cyphre™ cybersecurity product-line; its large-scale applications and IIoT offering; and the Intelie Live™ real-time machine learning and AI analytics platform. Viasat expects to leverage and combine RigNet's digital transformation solutions, global enterprise experience, support infrastructure and back office systems to expand into new global services.

**Global alignment**

With over 650 employees, RigNet has a strong global support infrastructure and operations      foundation      with      more      than      50%      of      its      employees overseas. RigNet's international  presence  aligns  with Viasat's expanding  global operations, enabling Viasat to find additional value and business complements for its ViaSat-3 globalization efforts.

Viasat intends  to  incorporate RigNet into  its  Global  Enterprise  and  Mobility business unit, led by President Jimmy Dodd, which will provide further complementary capabilities and support synergies to Viasat's existing mobility businesses. The RigNet team operates from its headquarters in Houston, Texas; management is expected to stay on to provide leadership, in-depth industry knowledge and customer relationship support.

**Transaction details**

Under the terms of the agreement, RigNet stockholders will receive 0.1845 shares

of Viasat common stock for each share of RigNet common stock, which represents a 17.9% premium based on the 20-day volume-weighted average prices of Viasat and RigNet. The transaction represents an enterprise value for RigNet of approximately $222 million, consisting of approximately $130 million in RigNet equity value, based on the closing price of Viasat common stock as of the date of the agreement and the assumption of approximately $92 million in RigNet debt, net of cash, at September 30, 2020. The transaction is expected to close by mid-calendar year 2021, subject to the satisfaction of regulatory approvals and other customary closing conditions.

Viasat has also entered into a support agreement with certain stockholders of RigNet, under which such stockholders have agreed to vote all of their RigNet shares in favor of the transaction at the special meeting of RigNet stockholders to be held in connection with the transaction, subject to certain terms and conditions. The RigNet shares subject to the agreement represent approximately 25% of the current outstanding voting power of the RigNet common stock.

**Advisors**

LionTree Advisors LLC and Latham & Watkins LLP acted as Viasat's financial and legal advisors, respectively. RigNet's financial and legal advisors in the transaction are Lazard Middle Market LLC and Baker Botts LLP, respectively.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

23.     On February 1, 2021, the Company authorized the filing of the Registration Statement with the SEC.   The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

24.     Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding the Company's Financial Projections**

25.     The Registration Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

26.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

27.     In order to make management's projections included in the Registration Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

28.     Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA; and (ii) Unlevered Free Cash Flow.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

29.     The Registration Statement fails to disclose Viasat's financial projections in their entirety.

30.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.   Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding Stifel's Financial Opinion**

31.     The Registration Statement contains the financial analyses and opinion of Stifel, Nicolaus & Company, Incorporated ("Stifel") concerning the Proposed Transaction, but fails to provide material information concerning such.

32.     With respect to Stifel's *Selected Comparable Company Analysis* for RigNet, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis.

33.     With respect to Stifel's *Selected Precedent Transactions Analysis* for RigNet, the Registration Statement fails to disclose the individual multiple and metrics for the transactions observed in the analysis.

34.     With respect to Stifel's *Discounted Cash Flow Analysis* for RigNet, the Registration Statement fails to disclose: (i) the basis for Stifel's application of a range of exit multiples from 5.0x to 7.0x, (ii) the basis for Stifel's application of a range of perpetuity growth percentages from 0.00% to 2.00%, and (iii) the inputs and assumptions underlying Stifel's application of discount rates of 12.0% -14.0%.

35.     With respect to Stifel's *Selected Comparable Company Analysis* for Viasat, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis.

36.     With respect to Stifel's *Selected Precedent Transactions Analysis* for Viasat, the Registration Statement fails to disclose the individual multiple and metrics for the transactions observed in the analysis.

37.     With respect to Stifel's *Discounted Cash Flow Analysis* for Viasat, the Registration Statement fails to disclose:  (i) the basis for Stifel's application of a range of exit multiples from 5.0x to 7.0x and 8.5x to 10.5x, (ii) the basis for Stifel's application of range of perpetuity growth percentages from 1.00% to 3.00%, and (iii) the inputs and assumptions underlying Stifel's use of discount rates of 7.0% - 9.0%.

38.     With respect to Stifel's *Pro Forma Combined Company Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the unlevered free cash flows for the pro forma combined company for projected calendar years 2021 through 2024; (ii) the inputs and assumptions underlying Stifel's use of discount rates ranging from 7.0% to 9.0%, (iii) the basis for Stifel's application of multiples ranging from 6.5x to 8.5x, and (iv) the basis for Stifel's application of growth range for the combined company in perpetuity of 1.0% to 3.0%; and (v) the pro forma fully diluted share count of the combined company.

39.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to

better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

40.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Sales Process

41.     The Registration Statement describes the sales process leading up to the Proposed Transaction, but fails to disclose material information concerning such.

42.     The Registration Statement notes that the Company entered into confidentiality agreements with potential interested parties, but fails to disclose whether any of the confidentiality agreements contained "don't-ask, don't waive" or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid.

43.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

### COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

46.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

47.     Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

48.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such

information to shareholders although they could have done so without extraordinary effort.

49.     The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

50.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

51.     The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

52.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

53.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

54.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55.     The Individual Defendants acted as controlling persons of RigNet within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of RigNet, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

56.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains

the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

58.     In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

59.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

61.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states

all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 24, 2021                    Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*